UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HIGHMORE FINANCING CO. I, LLC,

                        Plaintiff,

          -against-

THE GREIG COMPANIES, INC., JASON
ALLEN GREIG, DATASSURE CORP.,
JEFFREY SPARROW, STORBYTE INC.,
DIAMOND LAUFFIN, STEVEN
GROENKE, JOSEPH DRISSEL,
PAYRANGE INC., EQUINOX BUSINESS
LAW GROUP PLLC, SHAWN HARJU,
JOHN DOE, JOHN DOE, JOHN DOE, and
JOHN DOE,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/31/2023_

21 Civ. 11021 (AT)

**ORDER**

ANALISA TORRES, District Judge:

       Plaintiff, Highmore Financing Co. I, LLC, brings this action against Defendants The Greig Companies, Inc. ("TGC"), Jason Allen Greig, Datassure Corp. ("Datassure"), Jeffrey Sparrow, Storbyte Inc. ("Storbyte"), Diamond Lauffin, Steven Groenke, Joseph Drissel, PayRange Inc. ("PayRange"), Equinox Business Law Group PLLC ("Equinox Law"), and Shawn Harju, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and state law causes of action for, *inter alia*, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, negligence, and unjust enrichment. *See generally* Am. Compl. ¶¶ 7, 195–367, ECF No. 96.

       Before the Court are motions to dismiss filed by: (1) Lauffin, ECF No. 154; (2) Sparrow, ECF No. 158; (3) Drissel, Groenke, and Storbyte (collectively, the "Storbyte Defendants"), ECF No. 161; (4) Harju and Equinox Law (collectively, the "Equinox Defendants"), ECF No. 165; and (5) PayRange, ECF No. 170.[1] For the reasons stated below, Defendants' motions are GRANTED.

---

[1] On March 15, 2023, Plaintiff moved for entry of default against Defendants TGC, Greig, and Datassure. *See* ECF Nos. 56–61. That same day, the Clerk of Court entered certificates of default as to all three Defendants. ECF Nos. 62–64. On

## BACKGROUND[2]

I.   <u>Factual Background</u>

Plaintiff is a company that "mak[es] alternative investments, including in the lending space." Am. Compl. ¶ 2.  In connection with these alternative investments, Plaintiff uses Zenith Insured Credit ("Zenith"), a "purchaser of supplies broker," to act as a buying agent.  *Id.*  Zenith also identifies potential transactions for Plaintiff to finance.  *Id.*  In July 2019, Plaintiff and Zenith met Greig and Sparrow, representatives of TGC and its affiliate Datassure.[3]  *See id.* ¶¶ 10, 12, 37.  Greig and Sparrow sought funding from Plaintiff and Zenith for TGC to purchase high-end computer servers and ancillary equipment to be installed and hosted at Datassure.  *Id.* ¶ 38.

On July 2, 2019, Greig provided Zenith with due diligence materials for TGC, including a business overview, tax returns, bank statements, financial statements, and independent accountants' compilation reports, as well as Greig's personal financial statements.  *See id.* ¶¶ 40–43.  Unbeknownst to Plaintiff, these materials contained inaccurate information and inflated financial figures for TGC and Greig and, in some cases, were entirely falsified.  *Id.* ¶ 46.

But, unaware of the falsity and inaccuracy of the information, Zenith entered into a payment agent agreement with TGC on September 24, 2019.  *See* Am. Compl. ¶ 51.  The payment agent agreement governs the "present or future sale of goods and services" between TGC, as the buyer, and Zenith, as the seller, and sets forth terms for a financing loan for TGC to purchase computer

---

May 6, 2022, Plaintiff requested that the Court issue an order directing TGC, Greig, and Datassure to show cause why the Court should not enter a default judgment against them.  ECF No. 79; *see* ECF Nos. 80–81.  The Court shall address Plaintiff's request in a separate order.

[2] The following facts are taken from the complaint.  *See* Am. Compl.  The facts in the complaint "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).  "When jurisdictional facts are in dispute, the district court may consider materials outside the pleadings, including affidavits and other written materials."  *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 202 (S.D.N.Y. 2019).

[3] Greig is a managing director of TGC and the chairman of the board of Datassure.  Am. Compl. ¶ 10.  He is the owner and sole shareholder of Datassure.  *Id.*  Sparrow is the former Chief Executive Officer of Datassure and has acted on behalf of TGC as an agent and representative.  *Id.* ¶ 12.

equipment from Storbyte, a technology equipment supplier.[4]  *Id.* ¶¶ 51, 53.  Specifically, the agreement establishes that TGC must pay back any loans within 120 days of each invoice date or be subject to a late fee.  *See id.* ¶ 55.  On the same day, TGC and Zenith separately executed a guaranty which provided, *inter alia*, that Zenith could assign its interest in the payment agent agreement, and on September 30, 2019, Zenith assigned that interest to Plaintiff.  *Id.* ¶¶ 63–64.

Pursuant to the payment agent agreement, TGC submitted financing requests to Plaintiff for the purchase of computer equipment from Storbyte.  Plaintiff funded these requests on five separate occasions: September 30, October 4, and November 4, 2019, and January 17 and 30, 2020.  *See* Am. Compl. ¶¶ 68, 79, 86, 93, 103, 111, 119, 130, 135, 145.  Each time, Sparrow, on behalf of TGC, sent Plaintiff invoices purportedly from Storbyte, which listed the equipment to be sold to TGC.  *See, e.g.*, *id.* ¶¶ 69, 87, 104, 120, 136.  Each invoice contained the initials "DL," which are the initials of Lauffin,[5] who either prepared the invoices or assisted Greig in preparing them.  *See id.*  Unbeknownst to Plaintiff, the invoices listed equipment at inflated prices and, in some cases, equipment that was not sold by Storbyte at all.  *See, e.g.*, *id.* ¶¶ 77, 105, 121.

To facilitate the five payment transactions, TGC, Datassure, and Storbyte retained Equinox Law to serve as an escrow agent to receive and distribute the funds from Plaintiff.[6]  *See id.* ¶ 73.  For each transaction, TGC, Datassure, and Storbyte entered into an escrow agreement to facilitate the transfer of Plaintiff's funds into an escrow account, which was to be disbursed to Storbyte in satisfaction of the relevant invoice.  *See id.* ¶¶ 74, 91, 109, 125, 140.  Unbeknownst to Plaintiff, TGC, Datassure, and Storbyte instructed the Equinox Defendants to disburse Plaintiff's funds among them

---

[4] Groenke is a cofounder and the Chief Executive Officer of Storbyte.  Am. Compl. ¶ 14.  Drissel is a cofounder and the Chief Technology Officer of Storbyte.  *Id.* ¶ 15.
[5] In the amended complaint, Plaintiff alleges that Lauffin is a cofounder and employee of Storbyte.  Am. Compl. ¶ 16.  Lauffin and the Storbyte Defendants state that this assertion is incorrect and that, instead, Lauffin is a sales consultant working on behalf of Storbyte.  *See* Storbyte Mem. at 4–5, ECF No. 162; Lauffin Mem. at 1, 5, ECF No. 157.
[6] Harju is an attorney who formerly worked for Equinox Law and later served as General Counsel for Datassure.  Am. Compl. ¶ 19.

in contravention of the payment agent agreement, invoices, and escrow agreements.  *See id.* ¶¶ 80, 94, 112, 131, 146; *see also id.* ¶ 280.[7]

Datassure, for the benefit of TGC, repaid Plaintiff in full for the September 30, October 4, and November 4, 2019 transactions on October 30 and November 1, 2019, and January 23, 2020, respectively.  Am. Compl. ¶¶ 101, 134.  During this time, TGC also requested and obtained increases in its line of credit.  For instance, on October 11, 2019, Greig, on behalf of TGC, requested a credit line increase from $5,000,000 to $10,000,000, and on October 28, 2019, Plaintiff and Euler Hermes, a trade-related insurance provider, approved the credit line increase.  *Id.* ¶¶ 97, 100.

Although TGC repaid Plaintiff in full for the first three transactions, TGC defaulted on its repayments for the January 17 and 31, 2020 transactions, which were due on May 12 and 30, 2020, respectively.  *Id.* ¶¶ 150–53.  Plaintiff has repeatedly attempted to recover payment from Greig and TGC with no success.  *See generally id.* ¶¶ 155–78.  To date, TGC owes Plaintiff $19,954,515.07 for the January 2020 loans, plus interest and late fees.  *Id.* ¶¶ 1, 154.

II.    Procedural History

On December 22, 2021, Plaintiff commenced this action against Defendants TGC, Greig, Datassure, Sparrow, Storbyte, Lauffin, Groenke, and Payrange.  ECF No. 1.  On May 6, 2022, Plaintiff requested that the Court issue an order directing TGC, Greig, and Datassure (the "Greig Defendants") to show cause why the Court should not enter a default judgment against them.  ECF No. 79; *see supra* n.1; ECF Nos. 80–81.  On May 31, 2022, Plaintiff filed an amended complaint, which adds Defendants Drissel, Equinox Law, and Harju, and asserts twenty-one causes of action against Defendants, including violations of RICO, and state law causes of action for, *inter alia*,

---

[7] Separately, Datassure and PayRange entered into an agreement in which Datassure agreed to purchase at least one million "BluKey" devices from PayRange for $62.50 per device.  Am. Compl. ¶ 66.  PayRange was paid more than $5,000,000 from Plaintiff's funds for the purchase of 75,000 BluKey devices.  *Id.* ¶ 67.

breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, negligence, and unjust enrichment.  *See* Am. Compl. ¶¶ 195–367.

On September 9, 13, 16, and 22, 2022, Lauffin, Sparrow, the Storbyte Defendants, the Equinox Defendants, and PayRange separately filed motions to dismiss the amended complaint.  *See* ECF Nos. 154, 158, 161, 165, 170.  Defendants move to dismiss the complaint for: (1) lack of personal jurisdiction over Lauffin, the Storbyte Defendants, the Equinox Defendants, and PayRange under Federal Rule of Civil Procedure 12(b)(2), *see* Lauffin Mem. at 2, 37, ECF No. 157; Storbyte Mem. at 2, 10, ECF No. 162; Equinox Mem. at 1, 9, ECF No. 166; PayRange Mem. at 8, ECF No. 171; (2) lack of subject matter jurisdiction over the Storbyte Defendants under Rule 12(b)(1), Storbyte Mem. at 25; *see also* ECF No. 147; and (3) failure to state a claim as to all Defendants under Rule 12(b)(6), Lauffin Mem. at 2; Sparrow Mem. at 1–3, ECF No. 159; Storbyte Mem. at 1–2; Equinox Mem. at 2–3; PayRange Mem. at 2–4.

## DISCUSSION

I.   <u>Legal Standard</u>

A.  Personal Jurisdiction

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction."  *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).  "Because the Court has not held an evidentiary hearing on this issue, Plaintiff need only make a prima facie showing of jurisdiction through affidavits and supporting materials to satisfy this burden."  *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673, 2012 WL 123989, at *3 (S.D.N.Y. Jan. 3, 2012); *see also Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) ("In deciding a motion to dismiss . . . for want of personal jurisdiction, the

5

district court may consider materials outside the pleadings, including affidavits and other written materials.").

"District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction, . . . and second deciding whether the exercise of jurisdiction comports with due process." *BWP Media*, 69 F. Supp. 3d at 349 (quotation marks and citations omitted).  First, in a federal question case, the district court applies the forum state's long-arm statute, unless the federal statute at issue specifically provides for national service of process.  *Id.* at 350.  Second, the due process analysis "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  With respect to minimum contacts, a court "determine[s] whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  And, with respect to the reasonableness inquiry, personal jurisdiction comports with due process if "the defendant has certain minimum contacts with the [s]tate such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (cleaned up).  "Personal jurisdiction must be established for each defendant and for each asserted claim." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

### B.  Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the

6

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Further, a plaintiff alleging a fraud-based claim must also satisfy the heightened pleading standard of Rule 9(b), which requires plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To meet this standard, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Wood ex rel. United States v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) (summary order) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  Where multiple defendants are alleged to have participated in fraud, the complaint "should inform each defendant of the nature of [its] alleged participation in the fraud." *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987)).  "The requirements of Rule 9(b) are not satisfied by a complaint in which defendants are clumped together in vague allegations." *Id.* (citation and quotation marks omitted).  And, the Rule 9(b) pleading standard "applies to RICO claims for which fraud is the predicate illegal act." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999).

II.   Application

Plaintiff argues that the Court maintains personal jurisdiction over all Defendants pursuant to 18 U.S.C. §§ 1965(a)–(b).  Am. Compl. ¶¶ 27–34; Pl. Opp. at 32, ECF No. 174; *see BWP Media*, 69 F. Supp. 3d at 350 ("[T]he court in a federal question case applies the forum state's

personal jurisdiction rules, unless a federal statute specifically provides for national service of process." (cleaned up)).  Pursuant to § 1965(b), federal courts may exercise personal jurisdiction over foreign parties for RICO claims where it is "shown that the ends of justice require that other parties residing in any other district be brought before the court."  18 U.S.C. § 1965(b).  "[I]t is generally accepted that 'ends of justice' jurisdiction is authorized where the RICO claim could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants."  *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010) (citation omitted).

Therefore, before turning to personal jurisdiction, the Court first addresses Defendants' arguments that Plaintiff's RICO claims should be dismissed under Rule 12(b)(6).

A.  Failure to State a Claim: RICO

In Counts I and II of the amended complaint, Plaintiff alleges causes of action under RICO, 18 U.S.C. §§ 1962(c), (d), against the Greig Defendants (who have defaulted), Lauffin, Sparrow, the Storbyte Defendants, and PayRange (collectively, the "RICO Defendants").  Am. Compl. ¶¶ 195–307.  Plaintiff does not allege a RICO cause of action against the Equinox Defendants.  *Id.*; *see also* Pl. Opp. at 8 n.2.

To state a RICO claim under § 1962(c), "a plaintiff must show that a person engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citation omitted).  "Racketeering activity" is defined broadly under § 1961(1) to encompass the state and federal offenses listed in the statute, including claims for mail fraud, wire fraud, and money laundering.  *See* 18 U.S.C. § 1961(1).  In addition, a plaintiff must also allege that it was "injured in [its] business or property by reason of a violation of [§] 1962."  *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1964(c) (emphases omitted)).  Where a plaintiff asserts a claim against

multiple defendants, "[t]he elements of [§] 1962(c) must be established as to each individual defendant." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004).  Section 1962(d) separately provides that "[i]t shall be unlawful for any person to conspire to violate" the provisions of § 1962(c).  18 U.S.C. § 1962(d).

Here, Plaintiff fails to allege a pattern of racketeering.  To constitute a pattern of racketeering activity, a plaintiff must allege predicate acts that are "related" and "amount to or pose a threat of continued criminal activity." *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  A plaintiff may satisfy the continuity requirement by either showing (1) "closed-ended continuity" or (2) "open-ended continuity."  *See id.*  Close-ended continuity is "a series of related predicate acts extending over a substantial period of time," and open-ended continuity is a "pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

First, Plaintiff has not alleged facts sufficient to demonstrate close-ended continuity. "[F]actors such as the number and variety of predicate acts and the number of participants may be germane to" the issue, but "close-ended continuity is primarily a temporal concept." *Id.* (citation omitted).  As to the "substantial period of time" requirement, the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time.'" *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 382 (S.D.N.Y. 2022) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir.1999)); *see also Spool*, 520 F.3d at 184. Although the two-year requirement is not a "bright-line" rule, "it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where . . . the activities alleged involved only a handful of participants and do not involve a complex multi-faceted conspiracy." *Spool*, 520 F.3d at 184 (cleaned up).

The allegations in the amended complaint do not constitute "related predicate acts" that span over a "substantial period of time." *Id.* at 183.  Plaintiff first met the Greig Defendants and Sparrow in July 2019.  Am. Compl. ¶ 37.  The earliest related predicate acts occurred in July 2019 when the Greig Defendants and Sparrow provided inaccurate and false financial due diligence materials to Plaintiff and Zenith.  *See id.* ¶¶ 40–46.  In September 2019, Plaintiff signed the payment agent agreement with TGC, *id.* ¶ 51, and from September 2019 to January 2020, Plaintiff funded TGC's five financing requests pursuant to that agreement, *id.* ¶¶ 68, 79, 86, 93, 103, 111, 119, 130, 135, 145.  Plaintiff, therefore, alleges related predicate acts that spanned, at most, seven months, which is insufficient to satisfy the "substantial period of time" requirement under Second Circuit precedent.  *Cf. Rio Tinto PLC v. Vale*, No. 14 Civ. 3042, 2015 WL 7769534, at *11 (S.D.N.Y. Nov. 20, 2015).  And, Plaintiff does not allege a "complex, multi-faceted conspiracy to defraud executed by numerous [parties]" such that the Court could find an exception to the Second Circuit's well-established two-year requirement.  *Polycast Tech. Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926, 949 (S.D.N.Y. 1989).

Moreover, Plaintiff's attempt to extend the time frame of the predicate acts is unavailing.  Plaintiff argues that the RICO Defendants' "predicate acts commenc[ed] in August 2015 'when TGC and Greig filed a fraudulent financial document, Form D, with the SEC.'"  Pl. Opp. at 13 (citing Am. Compl. ¶¶ 1, 3–4, 39, 48, 204).  But, TGC and Greig's alleged fraud on the SEC is not "related" to the other predicate acts alleged in the complaint.  Predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J. Inc.*, 492 U.S. at 240.  Plaintiff does not allege that TGC and Greig's fraud on the SEC in 2015 was committed with the purpose of defrauding Plaintiff, whom they did not meet until years later in 2019.  *See* Am. Compl. ¶ 37.  Plaintiff also does not allege facts supporting that

any other RICO Defendant was involved with TGC and Greig's fraudulent submission to the SEC. *See Polar Int'l Brokerage Corp.*, 108 F. Supp. 2d at 237 ("[T]he complaint should inform each defendant of the nature of [its] alleged participation in the fraud." (citation omitted)).  Nor can Plaintiff claim that TGC and Greig used the fraudulent Form D to defraud Plaintiff because Plaintiff did not discover that document until after the alleged scheme ended.  *See id.* ¶¶ 39, 46. And, Plaintiff does not even allege that TGC and Greig's fraudulent SEC submission qualifies as racketeering activity under § 1961(1).  *See Spool*, 520 F.3d at 184–85.

Second, Plaintiff also fails to sufficiently allege open-ended continuity.  Open-ended continuity requires that the criminal activity "by its nature project[] into the future with a threat of repetition."  *H.J. Inc.*, 492 U.S. at 241.  "Some crimes may by their very nature include a future threat . . . . When the business of an enterprise is primarily unlawful, the continuity of the enterprise itself projects criminal activity into the future."  *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (citing *Spool*, 520 F.3d at 185).  Criminal activity may also be continuous "when 'the predicate acts were the regular way of operating that business,' even if the business itself is primarily lawful."  *Id.* (quoting *Cofacredit*, 187 F.3d at 243).  A plaintiff must specifically allege "some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity."  *Spool*, 520 F.3d at 185 (citation omitted).

Plaintiff asserts that the RICO Defendants' "regular way of doing business" is fraudulent, Pl. Opp. at 14, but that assertion is conclusory and unsupported by facts.  The RICO Defendants are each legitimate technology companies and computer equipment vendors or the respective representatives and agents of those companies.  Plaintiff's conclusory statement does not distinguish between the different RICO Defendants, *see U.S. Fire Ins.*, 303 F. Supp. 2d at 451 ("The elements of [§] 1962(c) must be established as to each individual defendant."), or support

that they engage in fraudulent activity as a regular course of business.  Even as to the Greig

Defendants, Plaintiff admits that TGC used the financing it received from Plaintiff for its intended

purpose—to purchase computer equipment, *see* Am. Compl. ¶¶ 96, 114, 133—and fully repaid the

financing it received in September, October, and November 2019, before defaulting on the January

2020 transactions, *id.* ¶¶ 101, 134.

Further, Plaintiff does not plead a "future with a threat of repetition," *H.J. Inc.*, 492 U.S. at

241, because the alleged scheme terminated when TGC "maxed out the available supplier credit

financing" and Plaintiff "stopped funding TGC."  Am. Compl. ¶¶ 6, 204.  After TGC's source of

funding ended, "the enterprise c[ould] no longer sustain itself and the scheme cease[d] to exist."

*One World, LLC v. Onoufriadis*, No. 20 Civ. 5802, 2021 WL 184400, at *10 (S.D.N.Y. Jan. 19,

2021).  Therefore, with no future threat of fraudulent activity, "it is impossible to infer any threat

of ongoing criminal conduct."  *Id.*

Accordingly, the RICO Defendants' motions to dismiss Count I for failure to state a claim

are GRANTED.[8]  In addition, because a failure to plead a substantive RICO claim under § 1962(c)

"necessarily defeats" a conspiracy claim under § 1962(d), *Lynn v. McCormick*, 760 F. App'x 51,

54 (2d Cir. 2019) (summary order), the RICO Defendants' motions to dismiss Count II for failure

to state a claim are GRANTED.

B.  Personal Jurisdiction

Because the Court cannot exercise jurisdiction over Defendants in accordance with

§ 1965(b), *see BWP Media*, 69 F. Supp. 3d at 352, the Court next analyzes whether personal

jurisdiction exists as to each Defendant.  *See Sunward Elecs.*, 362 F.3d at 24.  Lauffin, the Storbyte

Defendants, the Equinox Defendants, and PayRange (collectively, the "PJ Defendants") move to

---

[8] Because the Court concludes that Plaintiff has failed to plead a pattern of racketeering, the Court does not reach the
RICO Defendants' remaining arguments as to Plaintiff's RICO claims.

dismiss the complaint for lack of personal jurisdiction.  Sparrow does not move to dismiss for lack of personal jurisdiction.

New York's long-arm statute provides for general jurisdiction under the Civil Practice Law and Rules ("CPLR") § 301.  "General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile,'" and "a person may have only one domicile." *Reich*, 858 F.3d 55, 63 (2d Cir. 2017) (citations omitted).  As to a corporate defendant, under § 301, general jurisdiction is proper when "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (cleaned up).  A "corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 139 & n.19).

None of the PJ Defendants are domiciled or "at home" in New York.  Specifically, Lauffin is a resident of California, Drissel and Groenke are residents of Maryland, and Harju is a resident of the state of Washington.  Am. Compl. ¶¶ 14–15, 19.  Further, Storbyte is a Maryland corporation with its principal place of business in the District of Columbia, PayRange is a Tennessee corporation with its principal place of business in Oregon, and Equinox Law is a limited liability company with its principal place of business in the state of Washington.  *Id.* ¶¶ 13, 17–18. Therefore, none of the PJ Defendants are subject to general jurisdiction in New York.  Plaintiff's cursory assertion that general jurisdiction is appropriate because certain Defendants "were doing business in New York" is unsupported by caselaw.[9]  Pl. Opp. at 33–34.  And, Plaintiff's allegations

---

[9] In its opposition papers, Plaintiff cites a 1965 New York case, *Bryant v. Finnish Nat. Airlines*, 15 N.Y.2d 426, 432 (1965), which sets forth a legal test that is no longer good law after the modern standard for personal jurisdiction was articulated by the Supreme Court in *Daimler*, 571 U.S. 117.  *See* Pl. Opp. at 33.

do not support that this is a "truly exceptional case" such that the Court should exercise general jurisdiction over the nondomiciliary PJ Defendants.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted); *see also Reich*, 858 F.3d at 63 ("In an 'exceptional case,' an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, but the Second Circuit has yet to find such a case." (citation omitted)).

New York's long-arm statute also provides for specific jurisdiction under CPLR § 302. Plaintiff invokes CPLR § 302 but does not specify which subsections of § 302 apply to the PJ Defendants.  *See* Am. Compl. ¶¶ 28–34; Pl. Opp. at 33–34.  In any event, none of the § 302 subsections provide for personal jurisdiction over the PJ Defendants.

First, under § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary where the individual or entity "transacts any business within the state or contracts anywhere to supply goods or services in the state" on a cause of action "arising from" that transaction of business.  N.Y. C.P.L.R. § 302(a)(1).  Plaintiff alleges that the PJ Defendants "transact business in New York," Am. Compl. ¶ 23, because certain Defendants entered into escrow agreements "for the benefit of [Plaintiff], which . . . Defendants knew was a company located in New York."  Pl. Opp. at 34 (citation and quotation marks omitted); *see* Am. Compl. ¶¶ 28–34.  Plaintiff also claims that "the Defendants, through Greig, Sparrow or others acting on their behalf, . . . directly engaged with [Plaintiff] or its agent, Zenith, in New York," and "the funds in question, delivered to the Defendants' escrow account . . . originated from a New York-based business."  Pl. Opp. at 34; *see* Am. Compl. ¶ 23.

Plaintiff's assertion that the PJ Defendants "transact business in New York" is conclusory. Am. Compl. ¶ 23.  As an initial matter, Plaintiff relies on "group pleading, in which it conflates multiple parties and fails to provide specific allegations," thereby "neglect[ing] its burden of

establishing personal jurisdiction over each defendant." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) (citation omitted). Plaintiff cannot rely on the actions of the Greig Defendants to establish personal jurisdiction over the PJ Defendants.  Further, Plaintiff's arguments as to specific jurisdiction are entirely based on the fact that Plaintiff is located in New York, but "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  The personal jurisdiction "minimum contacts" analysis "looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Id.*  Plaintiff's allegation that the funds in the escrow account originated from Plaintiff is insufficient to support its assertion that the PJ Defendants transact business in New York.

Nor can Plaintiff argue that the PJ Defendants entered into a contract in New York.  Several of the PJ Defendants, namely Lauffin, the Equinox Defendants, and PayRange, were not even parties to the escrow agreements; besides, and more importantly, Plaintiff was not a party to the escrow agreements either.  *See* Am. Compl. ¶¶ 74, 109, 125, 140; *see also* ECF Nos. 96-12, 96-34, 96-41 (defining "Parties" as Storbyte, TGC, and Datassure).[10]  Plaintiff states that it was a "third-party beneficiary" of the escrow agreements, *see id.*, but does not cite contractual language from those agreements or allege any intent by the parties to confer a benefit upon Plaintiff.  Ultimately, the escrow agreements were contracts between two Nevada corporations (TGC and Datassure) and a Maryland corporation (Storbytes), with a Washington state escrow agent (Equinox Law), *see* Am. Compl. ¶¶ 9, 11, 13, 18—that is not enough to allege that the PJ Defendants transacted business in New York, as required for the Court to exercise jurisdiction under § 302(a)(1).

---

[10] "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).  The parties do not dispute that the escrow agreements, which are attached to the complaint as exhibits, are incorporated in the complaint by reference.

Second, § 302(a)(2) provides for personal jurisdiction over a non-domiciliary defendant who "commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2). Section 302(a)(2) jurisdiction is "narrow[]," and "for jurisdiction to attach under this subsection, a defendant's tortious act must have occurred while the defendant was physically present in New York." *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 299 (S.D.N.Y. 2020) (citations omitted). Plaintiff does not allege that the PJ Defendants committed any tortious acts while in New York, so jurisdiction under § 302(a)(2) is improper. Plaintiff's conclusory group pleading that "Defendants' illegal enterprise was targeted towards a New York [p]laintiff and carried out in New York" is not otherwise supported by specific factual allegations. And, for the reasons stated above, Plaintiff fails to allege a RICO enterprise. *See supra* Section II.A.

Third, pursuant to § 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state" if the non-domiciliary:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a)(3). Here, Plaintiff also fails to meet its burden as to § 302(a)(3). Plaintiff does not allege that the PJ Defendants regularly conduct or solicit business in New York; nor does Plaintiff allege that the PJ Defendants "derive[] substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). Therefore, Plaintiff has not pleaded that the PJ Defendants are subject to the Court's jurisdiction under § 302(a)(3).

Accordingly, the PJ Defendants' motions to dismiss the claims against them for lack of personal jurisdiction are GRANTED.[11]

C.   Failure to State a Claim: State Law Claims

Having dismissed the claims against the PJ Defendants for lack of personal jurisdiction, the Court addresses the remaining state law claims against Sparrow.  Plaintiff asserts causes of action for (1) aiding and abetting a breach of fiduciary duty, (2) breach of contract, (3) negligence, and (4) unjust enrichment.  Am. Compl. ¶¶ 314–35, 357–60.

First, Plaintiff alleges that Sparrow aided and abetted the Equinox Defendants' breach of fiduciary duty to Plaintiff.[12]  *See id.* ¶¶ 314–22.  "To establish an aiding and abetting claim, a plaintiff must adequately plead '(1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer.'"  *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 333 (S.D.N.Y. 2010) (citation omitted).  Assuming arguendo that Plaintiff has adequately pleaded a breach of fiduciary duty against the Equinox Defendants, Plaintiff has not sufficiently pleaded the third aiding and abetting prong—substantial assistance—as to Sparrow.  In its opposition papers, Plaintiff argues that "it was Lauffin, Sparrow and the Storbyte Defendants' instructions that led to the improper disbursements," Pl. Opp. at 22, but Plaintiff then cites paragraphs in the complaint that do not mention Sparrow, *see id.* (citing Am. Compl. ¶¶ 80 ("Storbyte, Datasure[,] and TGC instructed Equinox [Law] . . ."), 112 (same), 131 (same), 146 (same)).  Even if Plaintiff had alleged that Sparrow instructed Equinox Law to disburse the funds in violation of its fiduciary duty, Plaintiff does not plead sufficient facts in the complaint to support such an allegation.

---

[11] Because the Court dismisses Plaintiff's claims against the Storbyte Defendants for lack of personal jurisdiction, the Court does not reach the Storbyte Defendants' arguments as to subject matter jurisdiction.
[12] In Count III, Plaintiff alleges that the Equinox Defendants breached their fiduciary duty to Plaintiff by distributing the escrow funds in violation of the terms of the escrow agreement.  Am. Compl. ¶¶ 308–13.

Second, Plaintiff asserts five breach of contract claims against Sparrow for breaching the five escrow agreements signed in September, October, and November 2019, and January 2020. Am. Compl. ¶¶ 323–28.  Here, Plaintiff also fails to adequately plead breach of contract against Sparrow because, for the reasons stated above, neither Plaintiff, nor Sparrow, were parties to the escrow agreements, which define the parties as Storbyte, TGC, and Datassure.  *See, e.g.*, ECF Nos. 96-12, 96-34, 96-41.  And, Plaintiff's assertion that it was a "third-party beneficiary" to the escrow agreements is not supported by the plain language of the contracts.  *See Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006) ("[T]he parties' intention 'to benefit the third party must appear from the four corners of the instrument.'" (citation omitted)); *Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 561 (S.D.N.Y. 2001) ("The terms contained in the contract must clearly evince an intention to benefit the third person who seeks the protection of the contractual provisions." (citation omitted)).  Plaintiff does not plead an express provision or an inference of the specific intent to confer a benefit on Plaintiff as a third-party beneficiary; indeed, the escrow agreements do not even mention Plaintiff's name.  *See* ECF Nos. 96-12, 96-34, 96-41.

Third, Plaintiff asserts a claim for negligence against Sparrow for "negligently fail[ing] to exercise the due cared owed to [Plaintiff] by entering into the applicable [e]scrow [a]greements without ensuring that the amounts listed in the [e]scrow [a]greements and Storbyte invoices referenced therein reflected the actual value and price of equipment actually sold by Storbyte and actually purchased by TGC."  Am. Compl. ¶ 333.  For substantially the same reasons discussed above, Plaintiff's negligence claim against Sparrow fails because it is based on the allegation that Sparrow "owed a duty of care to [Plaintiff] because [Plaintiff] is the third-party beneficiary to the [e]scrow [a]greements."  Am. Compl. ¶ 331.  Because Plaintiff has not adequately alleged that it was a third-party beneficiary of the escrow agreements, its theory of negligence fails as a matter of

18

law. *Cf. Clark-Fitzpatrick, Inc. v. Long Is. R.R.*, 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").

Fourth, Plaintiff asserts a claim for unjust enrichment against Sparrow. Am. Compl. ¶¶ 357–60. "In order to state a claim for unjust enrichment, a plaintiff must plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience requires defendants to make restitution." *See Zeising v. Kelly*, 152 F. Supp. 2d 335, 345 (S.D.N.Y. 2001). Plaintiff's unjust enrichment claim against Sparrow fails because Plaintiff does not allege, *inter alia*, that Sparrow was enriched. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Plaintiff relies on "group pleading" to allege that "Defendants were unjustly enriched by at least $19,954,515.07 at the expense of" Plaintiff, Am. Compl. ¶ 360, but does not allege how Sparrow, personally, was enriched. *See HSM Holdings, LLC*, 2021 WL 918556, at *15.

Accordingly, Sparrow's motion to dismiss the claims against him for failure to state a claim is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss Plaintiff's claims for lack of personal jurisdiction and failure to state a claim are GRANTED. Plaintiff's claims against Defendants are DISMISSED without prejudice. The Court shall by separate order address Plaintiff's request that the Court issue an order directing the Greig Defendants to show cause why the Court should not enter a default judgment against them. *See* ECF No. 79.

The Clerk of Court is directed to terminate the motions at ECF Nos. 154, 158, 161, 165, and 170.

SO ORDERED.

Dated: July 31, 2023
      New York, New York

_____
ANALISA TORRES
United States District Judge